COULTER and HENDERSON v. BARNABAS HERROD et al.

B. H., one of the appellees, in March, 1852, filed a bill as assignee of one F. against L. and F. with H. the intestate of the appellants, to foreclose a mortgage on real estate which had been executed by said L., intended to secure said F. in the payment of three notes, each for the sum of three thousand three hundred and thirty-three and one third dollars. Of these notes the one first falling due was assigned by said F. to the said B. H., in satisfaction of a preëxisting debt, and F. at the same time made an assignment of the mortgage deed to insure the payment of the note; and the remaining two notes were assigned by said F. as collateral security for a debt due to M. and the said H.; the amount due them, for which the notes were assigned as collateral security, was, at the date of the foreclosure, one thousand six hundred and ninety-nine dollars and ten cents. L. and F. failed to answer, and a *pro confesso* was entered against them, but H. demurred, setting out the circumstances of the transfer of the notes to him, stating the sum due, and praying that the proceeds of the mortgaged property when sold should be applied *pro rata* to the payment of the notes held by him. A decree was pronounced according to the prayer of the bill, and the property was sold, when W. D., one of the appellees, became the purchaser for nine hundred and twelve dollars, and executed his bond according to directions of the decree; the mortgage property was sold on the 17th of July, 1843, and the bond did not fall due until the 17th of January, 1844, but on the 12th of the latter month the defendants sued out a writ of error and supersedeas in the circuit court, where the cause was tried. W. D., who was the purchaser at the commissioner's sale, was also the solicitor of the said B. H., and on the 17th day of January, 1844, filed with the clerk of the court a paper which purported to be a receipt from the said B. H. for the money due on his bond, and a discharge of his liability. The decree of the circuit court was reversed upon the writ of error, the high court of errors and appeals holding that the said B. H. was not entitled to prior satisfaction out of the proceeds of the mortgaged property, but that it should be applied *pro rata* to all the notes secured by the mortgage. The case was remanded to the circuit court, in

which the said H. filed a petition praying that the sale, for alleged irregularities, might be set aside, and the mortgaged property resold; but the prayer of the petitioner was disallowed and the petition dismissed; the decree affirming the same was sustained by this court (23 Miss. 434), and the case dismissed. Afterwards, the said C. and H., the representatives of said H., entered their motion in the circuit court of the county of M. to compel H. B. & W. D. and M., the latter of whom was the commissioner who had sold the mortgaged property for the purpose of applying it according to the decree of this court; but upon the hearing the motion was dismissed as to M., and an order entered by which the motion was dismissed also as to W. D., and the other, the said B. H., was required to pay into court the proportion of the proceeds of the sale to which the appellants were entitled according to the decree of this court, with legal interest thereon; and a commissioner appointed to ascertain the amount to which they were entitled, who reported that the proportion of the proceeds of the sale to which the appellants were entitled under the decree of this court, with interest from the date of the sale, amounted to the sum of one thousand and fifty-seven dollars, when the said B. H. excepted to the report of the commissioner; but his exceptions were overruled, the report confirmed, and a decree entered by which C. H. was required to pay that amount into court: — *Held*, that W. D. was not discharged from his obligation by the receipt of said B. H. filed with the clerk; and he is required to pay the money into court due from him for the property he purchased.

Where mortgaged property is converted into money pursuant to the directions of a decree of foreclosure, the purchaser stands in the relation of a trustee having in his possession a trust fund, which it is the duty of the court to dispense according to the rights of the parties.

The issuance of the writ of error and supersedeas suspended the operation of the decree which had been pronounced: — *Held*, that W. D. is presumed to have had knowledge of the issuance of the writ before the bond had been returned to the clerk indorsed satisfied.

The appellants are entitled to distribution upon the aggregate amount due on the notes, and not the actual amount due them by F., as their proportion of the mortgage found would not exceed their claims against F. *Held*, that the decree of the circuit court was erroneous.

IN error from the circuit court of Madison county; Hon. Robert C. Perry, judge.

The opinion of the court contains a statement of the facts of the case.

*W. R. Hill* and *A. H. Handy* for appellants.

*Lawson* for appellees.

Mr. Chief Justice SMITH delivered the opinion of the court.

It appears by the record in this case, that in March, 1842, Barnabas Herrod, one of the appellees, filed a bill as assignee of one Forney, against Samuel D. Livingston, A. G. Forney, and George W. Henderson, the intestate of the appellants, to foreclose a mortgage on real estate, which was executed by the said Livingston, and intended to secure Forney in the payment of three notes, each for the sum of $3,333.33. Of these notes, the one first falling due was assigned by Forney to Herrod in satisfaction of a preëxisting debt; Forney at the same time made an assignment of the mortgage deed to insure the payment of the note. The remaining notes were assigned by Forney as collateral security for a debt due to Motz and the said Henderson. The amount due to Motz and Henderson, and for which the notes were transferred as collateral security, amounted at the date of the foreclosure to $1,697.10. Livingston and Forney failed to answer, and a *pro confesso* was entered against them. Henderson answered, setting out the circumstances of the transfer of the notes to him, stating the sum due, and praying that the proceeds of the mortgaged property when sold, should be applied *pro rata* to the payment of the notes held by him. A decree was pronounced foreclosing the mortgage, ordering the property to be sold on six months' credit, and directing the proceeds when paid, to be applied first to the satisfaction of the complainant's demand. The property was accordingly sold, and Wesley Drane, one of the appellees, became the purchaser for $912, and executed his bond according to the directions of the decree. The mortgaged property was sold on the 17th day of July, 1843. The bond, of course, did not fall due before the 17th of January, 1844. On the 12th of that month, the defendants made out a writ of error and supersedeas from the circuit court of Madison, in which the case was tried. Drane, who was the purchaser, at the commissioner's sale was also the solicitor of Herrod, and on the 17th of January, 1844, filed with the clerk a paper which purported to be a receipt from Herrod of the money due on the bond, and a discharge of his liability thereon. The writ of error was prosecuted in this court, and the decree of the circuit was reversed.

This court holding, that Herrod was not entitled to prior satisfaction out of the proceeds of the mortgaged property, but that they should be applied *pro rata* to all of the notes secured by the mortgage. The cause was remanded to the circuit court, in which Henderson filed a petition praying that the sale for alleged irregularities might be set aside, and the mortgaged property resold. The prayer of the petition was disallowed and the petition dismissed. The decree dismissing the petition was, upon writ of error, affirmed by this court at the January term, 1852, 1 Cushm. Miss. R. 434, and the cause dismissed.

Afterwards the appellants, as the representatives of G. W. Henderson, who had died, entered their motion in the circuit court of Madison to compel Herrod, Drane, and William Montgomery, the latter of whom was the commissioner appointed to sell, and who had sold the mortgage property, to bring the money arising from the sale into court, for the purpose of applying it according to the decree of this court. Upon the hearing, the motion was dismissed as to Montgomery, and an order entered by which the motion was dismissed as to Drane. Herrod was required to pay into court the proportion of the proceeds of the sale to which the appellants were entitled according to the decree of this court, with legal interest thereon, and a commissioner appointed to ascertain the amount to which they were thus entitled. The commissioner reported that the proportion of the proceeds of the sale to which the plaintiffs in error were entitled under the decree of this court, with legal interest from the date of the sale, amounted to the sum of $1,057. Herrod excepted to the report of the commissioner, but his exceptions were overruled, the report confirmed, and a decree entered, by which he was required to pay that amount into court. To reverse that decree this writ of error is prosecuted.

The error complained of is, that Drane, by the decree, was discharged from his obligation to bring into court the proportion of the proceeds of the sale to which the plaintiffs in error were entitled.

Unless Drane was discharged by the receipt of Herrod, filed with the clerk on the 17th of January, 1844, no doubt can be

Coulter and Henderson *v.* Herrod et al.

entertained that it was competent for the court to enter a decree requiring Drane to pay the money into court. He was the purchaser of the mortgaged property at the sale made by the commission. By that act he submitted himself to the jurisdiction of the court in the suit as to all matters connected with the sale, or relating to him in the character of purchaser. *Requa* v. *Rea*, 2 Paige, Ch. R. 339. The reason of the rule is very manifest. When mortgaged property is converted into money pursuant to the directions of a decree of foreclosure and sale, the purchaser stands in the relation of a trustee having in his possession a trust fund, which it is the duty of the court to dispense according to the rights of the parties litigant. Hence, he must of necessity be subject to the jurisdiction of the court in all matters touching his relation as purchaser. For otherwise, the parties entitled to the fund might be delayed in the attainment of their rights, and the primary jurisdiction of the court baffled or defeated. The question then is, Did Herrod's receipt exonerate Drane from his liability on his bond as the purchaser, and thereby put an end to the relation in which he stood to the court? To determine this question, we must look to the circumstances attending the transaction.

Drane was the solicitor of Herrod, the complainant. He is therefore presumed to have had notice of all the proceedings in the cause down to the time of the confirmation of the report of the commissioner. The decree directed a sale of the mortgaged premises upon a credit of six months, requiring a bond to be taken from the purchaser, well secured for the purchase-money, and authorizing the commissioner, on the payment of the purchase-money to him, to execute a conveyance to the vendee. In this the decree was informal and irregular. It blended in the same decree what is wholly embraced in the interlocutory and final decrees. The direction and authority to make the conveyance should have been the subject of the final order. But the regularity of that decree, and the validity of the acts of the commissioner, are not now the subjects of adjudication. The money was directed to be paid to the commissioner. It is true the bond was made payable to Herrod, the complainant, and properly so. But this was more a matter of form than of

substance. The money was a trust fund, under the charge and control of the court. Herrod could not have received it rightfully without an order of the court; at least, if he did so, the character of the fund would not thereby be changed. It would still be a trust fund, subject to the future disposition of the court. When the land was sold, and the bond for the purchase-money was given, the commissioner did not wait for the payment of the money, but at once made a conveyance to the purchaser. On the 17th of January, 1844, the day on which the bond became due, Herrod gave a receipt to Drane for the purchase-money, which purports to be a full discharge of Drane's liability on the bond. The receipt was indorsed upon the bond. But previously, on the 12th of the same month, a writ of error and supersedeas was issued by the clerk, the defendants having given a writ of error bond, according to the directions of the statute. A citation was issued on the same day; but there is no proof in the record that it was served prior to the 17th; and the defendants denied in their answer that they had notice of the issuance of the writ of error before the receipt was given.

Unquestionably the issuance of the writ of error and supersedeas suspended the operation of the decree which had been pronounced. If it were competent for Drane, before the writ of error was issued, to discharge himself from his liability on the bond by a payment of the money to Herrod, he could not then do so. It is true the doctrine of *lis pendens* does not apply, unless there has been a service as well as an issuance of process. *Bacon et al.* v. *Gardner et al.*, 23 Miss. R. 96. But Drane did not stand in the attitude of a stranger. He was not only the solicitor of Herrod, but was also the purchaser, and as such had become a party to the proceeding, fully subjected to the jurisdiction of the court. He is therefore to be regarded as having had notice of the writ of error and supersedeas. He could not, by an act performed without the sanction of the court, disregarding the rights of the plaintiffs in error, relieve himself of the character in which he stood. If he had paid the money before the decree was superseded, we apprehend that his condition would not have been different. He was not

bound to pay the money to Herrod; but was bound to pay it to the commissioner. It was a trust fund, under the charge and exclusive control of the court. The commissioner himself would not have been authorized, without an order from the court, to pay over the money to Herrod. Hence, if the money were in fact paid before the decree was superseded, it was paid by the purchaser at his peril. Drane is therefore equally responsible with Herrod for the production of the sum to which the plaintiffs in error are entitled.

It is insisted, in behalf of the defendants in error, that the report of the commissioner appointed to ascertain the amount to which the plaintiffs in error were entitled, was erroneous, 1st. The commissioner, in making his estimate of the amount or proportion of the proceeds of the sale to which the plaintiffs in error were entitled, did not first deduct from the amount of the sale the costs of suit and other legal charges; and 2d, the commissioner charged interest at the rate of eight per cent. It is also insisted that the plaintiffs are entitled to a *pro rata* division of the fund, calculated on the basis of the sum actually due by the mortgagee Forney, at the date of the decree, to. Motz and Henderson, that is $1,697.10, and not upon the aggregate amount of the two notes placed in their hands as collateral security for that sum.

1. We do not think that the costs of the suit were properly chargeable upon the mortgage fund. The defendant was, in the first place, responsible for them, and there is no showing in the record whether they have or have not been paid by him.

2. The second objection is untenable. The note or bond for the purchase-money bore interest, agreeably to the statute, at the rate of eight per cent. per annum. The money has never been paid to the commissioner, nor paid into court. There is, therefore, no pretence for saying that the defendants in error are not bound to pay interest at the rate stipulated in the bond. There is, however, an error in the report, which should be corrected. The note assigned to Herrod became due one year before the first note matured, which was transferred to Motz and Henderson, and two years before the second. Hence, as the notes bore interest only from the date of their maturity, the

amount due at the time of the decree upon Herrod's note was greater, by one year's interest, than that due on the first, and by two year's interest, than the sum due by the second note held by Motz and Henderson. The amount, therefore, on which Herrod was entitled to a distribution of the fund, was more than one third of the aggregate amount of the principal and interest due upon the three notes secured by the mortgage. He was consequently entitled to more than one third of the proceeds of the sale. In this respect, the report and the decree based upon it are erroneous.

Motz and Henderson held an interest in the two notes transferred to them by Forney, equal to the amount of their demand against him, and no greater. But as these notes were transferred as collateral security for their demand, they had a right, under the previous decision of this court in this case, pronounced at the January term, 1847, to use them, in order to secure their claim. The principles laid down in the decision referred to are, upon settled doctrine, the law of the case, and are consequently binding upon us in the present adjudication. The plaintiffs in error are therefore entitled to distribution upon the aggregate amount due on the notes, instead of the amount actually due to them by Forney, as the proportion of the mortgage fund which would thus be paid them would not exceed their claim against him.

Let the decree be reversed, and a decree be entered in this court against the appellees, in conformity with this opinion.

HANDY, J., having been engaged in this case as counsel, took no part in the decision.