# MISSISSIPPI DECISIONS

## CONTAINING THE

# UNREPORTED OPINIONS OF THE SUPREME COURT.

### W. S. Dodson *v.* J. W. Homan.

**Chancery Court — Power to Set Aside a Sale After Confirmation.**

After an order confirming a sale made to foreclose a mortgage the Chancery Court has the power, at the same term, to set aside the sale on the application of the defendant, if good cause is shown.[1]

**Same — Garnishment of Proceeds of Sale — Rights of Purchaser Who Has Garnished.**

Where the purchaser at a foreclosure sale, which is set aside, is also a creditor of the complainant and has attached him and had writs of garnishment served on the defendant and the commissioner who made the sale, he will retain his lien acquired by the garnishment on the proceeds of the second sale, unless it be shown that the complainant had sold the note sued on before the garnishments were served.

**Same — Proceeds of Second Sale — How Dealt With.**

If a second sale under the decree of foreclosure take place, the money must be· brought into court to be distributed as the court directs and it will be treated as belonging to the complainant.

---

[1]
"And when the sale has been completed, the executor or administrator shall make report thereof in writing to the court, stating the time and place of sale, the name of the purchaser, and the amount of the purchase money; and shall satisfy the court that the directions prescribed in the decree of sale have been followed; and thereupon the court shall proceed to make a decree confirming the sale, unless good reason be shown to the contrary. And the court shall order the executor or administrator to make a conveyance to the purchaser of the land so sold, which shall vest in the purchaser as good and perfect an estate in the premises therein mentioned, as the heirs or devisees of such testator or intestate were seized of, or entitled to, at the time such order of sale was made; *provided,* that if such sale be not reported to the following term of the court, the same shall not be void, but the court may compel the making of a proper report at a subsequent term, and may then confirm or set aside the same, and the person failing to make such report in proper time may be fined by the court as for a contempt, not exceeding $100." Code of 1880, § 2050; Code of 1892, § 605; Code of 1906, §655.

**Same — Rights of Purchaser When Complainant Fails to Proceed.**

  If the complainant fails to procure a re-sale, the purchaser, who has garnished, may file a bill to compel a sale under the decree of foreclosure by virtue of his rights under the garnishment.

**Same — Condition Precedent to a Re-sale.**

  In such case where a re-sale is ordered by the Supreme Court, it will not be required as a condition precedent to a re-sale that the costs of the lower court and an attorney's fee to the purchaser be first paid, but it will be required that the purchase money and interest thereon be paid to the purchaser and the costs in the Supreme Court be paid.

  W. S. Dodson being indebted to J. W. Homan executed his note to him for $2,500, dated April 4, 1877, due twelve months after date; he gave a mortgage on certain lands in Jackson county, signed by himself and wife to secure it. In 1879 certain other creditors of Dobson sued out attachments against him, which were levied upon the land, whereupon Homan filed a bill in the Chancery Court of Jackson county on June 24, 1879, to foreclose his mortgage, making Dodson and wife and the attaching creditors parties defendants. The attaching creditors demurred to the bill and their demurrer was sustained. The summons was made returnable to rules on the second Monday of July, 1879, and was executed by personal service on Mrs. Dodson and by leaving a copy of the summons for W. S. Dodson at his home, he being absent from the State. Dodson and wife failed to appear and a *pro confesso* decree was taken against them. The case was referred to the master and a final decree was rendered at the September term, 1879, ordering the sale of the land embraced in the mortgage after thirty days' publication in the newspapers. The commissioner reported to the March term, 1880, that in pursuance of the terms of the decree the land had been sold and that J. G. Spor had become the purchaser for $600 cash, and on the 2d day of March, 1880, a decree confirming the sale was entered; a decree was also rendered allowing an attorney's fee to complainant's attorney of $100. On the 6th day of March, 1880, during the same term of court, Dodson filed a motion to set aside the final decree and proceedings and sale and allow him to answer, filing therewith his petition and affidavit, in which he states that the sale of the property under the decree was caused by the unfair and improper conduct of the attorney for the complainant, who proceeded to obtain a decree and sale without the knowledge of either the com-

plainant or the defendants, and after he had been relieved by complainant from further consideration of the cause and without notice to complainant; and that affiant on learning of the sale a few days before it took place and on complaint to complainant, was informed that he had ordered it discontinued, and that neither complainant or defendant attended the sale; that the property was worth $3,000 and was sold for $600; that complainant had sold the note sued on and the true owner of it and the mortgage was a resident of the State of New York, who had no knowledge of the sale. Homan, the complainant, made affidavit to substantially the same facts. The attorney filed affidavits denying the facts set up in these affidavits. Before the sale under the foreclosure proceedings J. G. Spor sued out a writ of attachment against J. W. Homan and garnished W. S. Dodson and the commissioner who made the sale of the land under the decree. Dodson also filed with his motion and petition his answer to the original bill to foreclose the mortgage, in which he admitted the execution of the note and mortgage and that it was still due and unpaid, but avers that the complainant, Homan, was not at the time the answer was required by law to be filed the owner of the note, and that he was in no way interested in it or the mortgage; that said Homan had, before the decree *pro confesso* had been entered, sold and transferred said note and mortgage to one J. N. Howell, and that said holder of the note had extended the time of the payment of said note; that the complainant in the bill had instructed his attorney to discontinue the suit and stop the proceedings; that this defendant is not now and was not at the time the *pro confesso* decree was entered indebted to the complainant in any sum of money on the note and mortgage.

The motion to set aside the sale and confirming it and ordering the distribution of the purchase money and allowing an attorney's fee was overruled and the defendant, Dodson, prosecutes a writ of error to the Supreme Court.

After the order of reversal had been rendered in the Supreme Court, Spor, the purchaser, made the following motion: "J. G. Spor, purchaser in this case, moves the court to amend the order remanding the same so as to provide as a condition precedent to granting a re-sale of the property that the defendant, Homan, shall within thirty days pay to the commissioner the interest on Spor's purchase, the same with the $600 to be refunded to the

purchaser; also that said defendant be required within said time to pay to the purchaser a reasonable solicitor's fee; also that he be required to pay all costs of the application for a re-sale and the costs of this court."

APPEALED from Chancery Court, Jackson county, GEO. WOOD, Chancellor.

Reversed and remanded, April 11, 1881.

Amended decree, April 25, 1881.

*Attorneys for appellants, W. P. & J. B. Harris.*

*Attorneys for appellee, L. Brame.*

Brief of W. P. & J. B. Harris:

It is well settled that a final decree on a *pro confesso,* when the service was by copy left at defendant's residence, should be set aside if defendant was absent from the State at the time, and in fact had no notice of the suit until after the decree was entered, if he shows that he had a good defense. McGowan *v.* James, 12 S. & M. 445.

The present case at bar presents a strong appeal for a favorable application of the above rule. In this case the defendant was not only absent from the State, but was also under the impression that the proceeding which was to be instituted against him was to be abandoned. This was his understanding with the complainant. It does not appear that the proceeding was instituted before he left the State, but it does appear that he was never personally served with process. His wife, with whom the summons was left, was ill and very old, and died before the proceeding terminated.

The answer which he files shows this defense, to wit:

That he was under the impression that the proceeding, if any had been instituted, had been discontinued, and, further, that at the time the *pro confesso* was taken, and before the return day, Homan had parted with his interest in the note, and he was no longer indebted to Homan; that the purchaser was not a party to the proceedings—in fact had no knowledge of them. That the

note is still outstanding in the hands of the purchaser, who resides in New York, and who had extended the time for payment.

In support of this, we have not only the affidavit of Dodson, but also that of Homan, who says that he positively instructed his attorney, Heidelberg, to dismiss the bill; that the decree was unauthorized and against his wish; that he had parted with his interest in the note; and that the decree and sale thereunder would be a great injustice and hardship to both complainant and defendant, as the land had been sold far below its value.

It would seem from the counter affidavits that great stress was laid upon the failure of Dodson to make his formal application to set aside the decree until after the order of confirmation had been passed. But we insist that his application was in time. After confirmation at the same term at which the confirmation is made, the order to that effect may be set aside and the sale disaffirmed, just as if no order of confirmation had been made. Henderson *v.* Herrod, 1 Cush. 434.

And although the final decree of foreclosure was rendered at the September term, 1879, it was not so far final that the court did not have power to set it aside at the March term, 1880. When in order to give the successful party the benefit of the decree it is essential that it be executed, jurisdiction does not cease until execution is had. 33 Miss. 153.

The decree in this case was not complete then until the commissioner's report was made and confirmed, which was at the March term, 1880, hence the court had power to entertain the motion at that term to set aside.

The case presents this strange state of facts: A decree rendered (we must say, by mistake) against the consent and wishes of both complainant and defendant—both seek to have order of sale and sale set aside because it is a great hardship to both, while the rights of no third party are injuriously affected. The purchaser is not hurt—he can be put in *statu quo*. His money is still in the hands of the clerk. The only complaint he can make is that he has lost the chance to get a valuable property at a grossly inadequate price.

It seems that this court at least, considering all the facts, if it thinks the sale should be had at all and the great sacrifice at which the property is sold, should have the sale set aside, and

give the parties materially interested a chance to make the property bring something like its true value on a re-sale.

The mistake in obtaining the order of sale is, we think, sufficient ground for setting aside the sale.

Brief of L. Brame, for purchaser, Spor:

The decree of foreclosure and sale entered at the September term, 1879, was not interlocutory but final, and the court had no power at the March term, 1880, to set it aside. Cromwell *v*. Craft, 47 Miss. 44.

The case of Gaff *v*. Robins, 33 Miss. 153, relied on by opposite counsel, does not sustain a different view. It is to the effect merely that the court may make some alterations in carrying into *execution* a decree rendered at a former term. A commissioner may be substituted, the notice and terms of sale may be changed, perhaps; but the decree itself, as it affects the substantial rights of the parties, must stand.

Section 1036, Code 1871, authorizes an exception to the action of the court on a motion to set aside a *pro confesso,* and provides that matters *en pais* may be made of record by bill of exceptions. This applies to cases where no final decree has been taken; or, if a final decree has been entered, then the application must be made during the term. Long after the term has passed, when the court has lost all control over the decree, a party cannot make a motion and by bill of exceptions bring in matters *dehors* the record. To decide that the court in this case had the power to vacate its decree entered at a former term, would be to hold that the court could, at an indefinite time after the rendition of a decree, set it aside or modify it. The defendant's remedy was by bill of review, or by original bill to attack the decree directly.

No bill of exceptions in accordance with the statutes above referred to was taken. Therefore, if the objection as to the time of the application did not exist, still this court would presume that the chancellor acted properly in refusing to set aside the *pro confesso,* inasmuch as it does not appear by the record upon what he acted in overruling the motion.

But the showing made by Dodson was altogether insufficient, even if it could be considered to authorize setting aside the *pro confesso* and the decree based thereon.

Did the court err in refusing to set aside the sale? Dodson

was involved. Several attachments had been sued out and levied on the property in controversy, upon which Homan held a mortgage. This bill was filed by Homan against Dodson, and the attacking creditors were (improperly) made parties defendant. The attorney who filed the bill was employed for that purpose by Dodson himself. He procured the bill to be filed against himself by his own attorney, who was representing him in the attachment suits. The attaching creditors were made parties to this bill, and at the same time Homan gave them formal notice that he would hold them responsible in damage for levying on the property. This was preposterous, of course, but it was done for an object. About the same time Homan also gave the attaching creditors written notice that he owned the goods in the store of Dodson, and that he would claim damages for their levying on the same. These goods were not embraced in his mortgage, and there is no evidence except in the written notice that Homan had any title or interest in them.

The desired end was accomplished. The creditors who had sued out attachments against Dodson were induced to compromise at a great sacrifice. In the meantime Homan had become involved, and two attachments were sued out against him and levied on the property here, and Dodson was summoned as garnishee. Both these attachments were sustained. J. G. Spor was the plaintiff in one, and obtained judgment for $940.

The commissioner having advertised the property in this case, Spor appeared at the sale and purchased it. Dodson then comes in and makes an application to set aside the decree of sale and all proceedings under it. Homan also asks that the property be resold, but not that the decree of sale shall be set aside.

The sale was openly and fairly made. Homan says that the sale was brought on by his attorney in violation of instructions and in bad faith. He also states that the note for which the mortgage was given had been transferred to a "resident of New York." Mr. Heidelberg, the attorney, swears positively that the allegations of Homan as to his acting without authority or in violation of authority is untrue, and he is corroborated by the other testimony and the circumstances of the case. Homan testifies as an interested party, anxious to evade his creditors and to defeat Spor in his purchase. Heidelberg could have had no interest in having the property sold in violation of his client's instructions.

He was not interested in Spor's suit. It cannot be true, that without any possible motive, he would act with infidelity to his client and deliberately do a thing certain to disgrace himself. · The truth is, Homan trumped up the idea that he had ordered the suit discontinued after he saw that Spor had gotten into an attitude to protect himself. The whole thing was an after-thought, and just so in reference to the transfer of the mortgage· note. On the face of it, his story is highly improbable. He says the note was assigned to "a resident of New York," but when, or · where, or for what consideration, is not stated, nor does he even . give the name of the person. The record discloses the fact that there was a scheme on the part of Dodson and Homan to defeat the creditors of the former, and that afterwards they combined to defeat the creditors of Homan, who is utterly insolvent. Their object is manifest: it is to have the sale set aside, then the New York man comes in, the decree is proceeded with in his name, and the creditors of Homan can whistle for their money.

It will be remembered that nothing was said to anybody, either as to the transfer of the note or the violation of instructions on the part of Mr. Heidelberg, *until after Spor had purchased the property.*

All these things go to show that the causes alleged by Homan for setting aside the decree were untrue. Homan saw the notice of sale under a decree which he now swears was taken in violation of his directions, yet he did not attend the sale, nor did he communicate with his attorney about the matter. Dodson did not attend the sale either, though he lived within a short distance. Almost daily he passed within a few rods of the courthouse where the decree was enrolled, yet he did not mention to Mr. Heidelberg or to the clerk, who was the commissioner, that there was any irregularity in the proceedings, or any objection to the sale whatever. The fact that the sale was to be made was notorious; and it does seem a little strange, to say the least of it, that neither Wood, nor Spor, nor Heidelberg, nor the commissioner heard of the objections now urged until after Spor's purchase. The clerk says that he had no intimation of any· irregularity in the proceedings until the day of sale, when W. S. Dodson, Jr., son of the defendant, stated that the mortgage debt had been *paid.* Now here was this young man, who had been acting for his father, present at the sale. He claims now to have known previous to

that time that Homan had ordered the suit discontinued; and, of course, if it was a fact, he knew that his father, who lived hard by, was under the impression that there would be no sale, yet he says not one word and sees Spor purchase the property without objection. It is true he said his father had paid the debt; but instead of supporting the theory which these parties rely on, that statement was and is inconsistent with it.

Suppose young Dodson himself had purchased that property at a bargain, does the court believe we would have ever heard of the disgraceful conduct of Mr. Heidelberg, or of that mythical man, "a resident of New York?"

It is perfectly manifest that these parties are not seeking a re-sale in order that the property may bring a better price; their object is to defeat Spor.

The sale was open and fair and Spor is entitled to his purchase. He occupied no fiduciary relation to the parties and had a right to buy the property low. In such case mere inadequacy of consideration will not induce a court of equity to set aside the sale. 43 Miss. 314; 4 McLean, 241.

Especially will the court refuse to interfere if there is reason to believe that there existed a scheme on the part of these men to defeat and defraud creditors. A court of equity will not lend its aid to any such designs. The parties dealt at arms' length so far as the sale is concerned. The purchaser was not only under no fiduciary restraint, but he occupied the attitude of one who had an adverse interest. He has secured the vantage ground and is entitled to hold it.

Now, at whose instance is this sale to be set aside? Neither Dodson nor Homan have shown sufficient reason to induce the court to act. If the note was really assigned to some party in New York after suit was brought, the title of the purchaser under the decree taken in the name of Homan ought not to be affected. This party in New York gave no notice of his rights; and, if he were before the court, he could not object that the decree was improperly taken in the name of Homan. The note was assigned to him while the suit was pending, and he stands somewhat in the attitude of a purchaser of property *lis pendens.* He is entitled to the proceeds of sale and can control the decree; but Spor's title, acquired without notice of the assignment, ought not to be defeated.

But the man who is said to be the assignee of the note is making no complaint. So far as the court is informed, he may be perfectly willing to accept the $600 and allow the sale to stand.

On the facts of the case, the court below found that Homan and Dodson were not entitled to have the sale set aside. The chancellor believed that the charge as to the misconduct of Mr. Heidelberg was a mere after-thought, and that the scheme heretofore alluded to existed by means of which these parties succeeded in defeating the creditors of Dodson, and attempted to defeat the creditors of Homan. Certainly it cannot be said that this finding upon the evidence is so manifestly wrong as to authorize this court to reverse the decree.

There is no bill of exceptions, and therefore this court cannot be advised as to what evidence was considered by the court below. It is true that the depositions and other evidence used in progress of a cause in the Chancery Court constitute a part of the record without bill of exceptions. But here the case had progressed regularly to a final decree and there was a sale and decree of confirmation. It is not claimed that these proceedings were in any respect irregular or erroneous, so far as the record shows. After final decree, by the introduction of matters *en pais,* it is sought to vacate the sale. As this is an effort to destroy the conclusiveness of the proceedings, which were complete and final, the affidavits and other documents used in support of and against the application should have been embodied in a bill of exceptions.

While it may be true that the affidavits read in support of the application to set aside the sale are a part of the record, there is nothing to indicate that these affidavits contained *all* the evidence. We certainly had a right to read in evidence, as opposed to the application, the attachment papers, deed of assignment, notice, etc., and when the chancellor decided the question in our favor, it was not incumbent on us to make these things formally a part of the record. This could only be done by bill of exceptions. As the decision was in our favor, of course we could not except. It was for the other parties, if they proposed to predicate error on the action of the court, to except and preserve in proper form *all* the evidence used.

If such is not the proper practice, we do not see what rule the clerk would have to go by in making the transcript. There would

be no authentic method of determining what was or what was not a part of the record.

The action of the lower court must be presumed correct. As there is no means of knowing whether the clerk has copied in the transcript all the evidence that was used or introduced before the chancellor, we insist that the appellant has failed to *show* error, and therefore the decree must be affirmed.

It is said the property was sold at a sacrifice, and counsel insists that Spor has made a bargain. While this may be true, we call the attention of the court to the fact that Spor does not appear in the role of a speculator. He was interested that these parties should not have this property bought in at a nominal sum, and he went to the sale and bid on the property to protect his interests; and, while he claims the right to hold on to a bargain if he has one, the proposition is now here made to release all claim to the property if the parties will pay to him the amount of his debt against Homan and all costs.

Brief for appellants, in reply, of W. P. & J. B. Harris:

The view taken by opposing counsel that this was a scheme to defraud creditors is wholly suppositive, and he assumes it to be a fact. It could not have defeated the creditors of Dodson, because Homan's mortgage covers the property to its full value and the creditors of Dodson could not reach it. It cannot defeat Spor— his claim is still good against Homan, and if the sale is set aside he will still have an opportunity to purchase.

The court will observe that the note and mortgage were withdrawn from the records, with the knowledge and consent of complainant's counsel, with the view of stopping the proceeding, and are now held by Mr. J. N. Howell in New York, and were withdrawn before the *pro confesso.*

The key to Mr. Heidelberg's persistence in the matter is that he had a charge of $100 attorney fee, which he wished to get out of the property.

The fact that the holder of the note and mortgage does not appear and complain is no reason for upholding this sale. The proceeding was a surprise to everybody concerned except Heidelberg and Spor. It was not necessary that he should appear. The fact that the notes are outstanding is one of the grounds upon which Dodson asks relief.

There was no posting of notice, and publication was made in an adjoining, and not in a paper in the county where the decree was rendered or where the land lies. And although Dodson may have lived near the courthouse, there is no proof that he was at home when the advertisement was made or the *pro confesso* taken.

The court will see by examination of the record that the case went off in the court below on a question of diligence.

It is apparent that a purchaser who cannot be hurt by a re-sale should not, under the circumstances of this case, be allowed to hold the property at so inadequate a price, as the sale was clearly made by mistake.

OPINION.—CAMPBELL, C. J.:

This cause proceeded to final decree in the court below, certainly against the wishes and perhaps in violation of the instructions of the complainant. The property sold under the decree seems to have been sacrificed, and this grew in great measure out of the surprise operated upon all parties by the undesired prosecution of the suit. There is strong ground to suspect that the desire for a discontinuance of the litigation sprang from a scheme to defraud creditors. This however may not be true, and if it is not, the grossest injustice will be wrought by an affirmance. It is not perceived how any wrong will be done by ordering a re-sale of the property and giving an opportunity to litigate over the proceeds. If the complainant, Homan, is shown to be still the owner of the note sued on, the proceeds of the sale, or so much thereof as is necessary to satisfy his creditor, Spor (who is also the purchaser of the property), will go to Spor by virtue of his attachment and garnishment. If, on the contrary, it be shown that complainant had sold the note sued on before the date of Spor's garnishment, it is not right for Spor to have the money. In any event, by a return of the purchase money paid by him he will be protected from loss.

The decree of confirmation and the decree distributing the purchase money and awarding a fee to the attorney of complainant is reversed, and cause remanded with instruction to the court below to enter an order refunding to Spor the purchase money paid by him with interest, the interest to be paid by defendant.

If a sale takes place under the decree of foreclosure, the money must be brought into court to be distributed as the court may

direct, and of course it will be treated as belonging to complainant and subject to the garnishment, unless some third person intervenes and shows a better right to it. If no sale is procured by the complainant, Spor must file his bill to compel one by virtue of his rights under his garnishment.

Brief on motion of W. P. & J. B. Harris:

Spor is not a party to the suit. He makes his first appearance on the motion. He has not attempted to assert his title to the land —he has merely paid the purchase money to the clerk, and has let the matter take its course.

The statute does not authorize this court to order the attorney's fee to be taxed in such a case. On those cases where such is authorized by statute, the record is plain, as the $50 attorney fee allowed on appeal from decrees overruling demurrers, and where decree is affirmed, etc., which is a penalty for taking an appeal in which there is no merit, and to prevent a practice often resorted to for delay simply. Laws relative to costs must not be interpreted as penal laws. Code 1880, § 2375.

The request for an attorney's fee is unwarranted, and would be as unjust as it is unprecedented.

Spor does not figure in this record as a litigant at all. He appears from the proof to have been an attaching creditor of Homan. Homan does not petition the court to set aside the order of confirmation—he makes an affidavit to facts in support of Dodson's petition, whereby it appears that the decree was obtained against his wishes and consent. This court and the court below refuses to allow Heidelberg $100 attorney's fee.

We think as the decree now stands, full justice will be done all parties. There is nothing in the record by which this court would be authorized to declare Homan insolvent. All that appears in the record on that point is in the shape of statements which amount to mere conjectures in some of the affidavits filed by party opposing the motion to set aside the sale.

Should there be opinion that Spor is a party to the record, as appellee, we say that it is not our intention to attempt to saddle any costs upon him, but we certainly do think as to the other appellee judgment should stand.

Brief on motion, for purchaser, Spor, of L. Brame:

By his purchase, Spor submitted himself to the jurisdiction of the court and became a party to the suit. Coulter *v.* Harrod, 27 Miss. 685.

He, as an appellee in this court, was cited by service of process on his counsel, and his name is put down on the docket as a party. The order is that the appellant recover of the "appellees" the costs of this court. Homan is not the appellee. He is a mere figurehead. In fact, he and Dodson made a common fight from the first. They both petitioned the court to set aside the sale. If the order stands as it is, the result will be that Spor will have all the costs to pay. Homan is insolvent. Apart from the question of imposing terms as a condition for granting a re-sale, the court has full power in its discretion to tax either party with costs. These parties suffered Spor to purchase this property and pay his money without the slightest intimation of any irregularity, and this too when Dodson had a son at the sale and was himself living close by. The court has ample and undoubted power to order that the purchaser be placed in *statu quo.*

It is a mere matter of grace that a re-sale is ordered, not that these parties have any merit. This court has said in the opinion delivered in this case that there was ground to believe that Homan and Dodson had entered into a fraudulent scheme to defeat creditors. If there was no such scheme, certainly these parties were guilty of *laches.* They are responsible for the trouble. They should be made to pay for the music.

Spor is not here as a speculator. He is not on a raid. He was forced into this court in trying to protect his interests.

It is not sufficient that a judgment should be entered against Dodson, or Homan, or both, for they are insolvent. If terms are imposed, the court should require them complied with within a definite time as a condition precedent to granting a re-sale. Ins. Co. *v.* Oakley, 9 Paige, 264.

If Spor is not a party to the appeal, how does the court set aside the sale?

OPINION.—ON MOTION:

Motion denied as to attorney's fee; denied also as to making prepayment of costs in court below a condition precedent to setting aside the sale. The costs of this court will be divided be-

tween Dodson and Homan, and their payment will be a condition precedent to setting aside the sale. Costs in lower court to abide result of the suit. In all other respects the motion is sustained.